**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAXUM INDEMNITY COMPANY, | 1:17-cv-01467-LJO-JLT |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BALDWINDER KAUR, d/b/a SAFEWAY TRUCK DRIVING SCHOOL, et al., | (ECF No. 50) |
| Defendants. | |

## I. <u>INTRODUCTION</u>

This is an insurance coverage dispute between Plaintiff Maxum Indemnity Company ("Maxum") and Defendant Baldwinder Kaur, doing business as ("dba") Safeway Truck Driving School ("Kaur"), regarding coverage for claims asserted against Kaur in an action filed in January 2017 and currently pending in California Superior Court for the County of San Bernardino. On October 31, 2017, Maxum brought this diversity jurisdiction action pursuant to 28 U.S.C. § 1332 against Kaur, and named several other Defendants that are all parties in the state court proceeding. ECF No. 1.[1] Maxum alleged two counts against Defendant Kaur seeking declaratory relief pursuant to 28 U.S.C. § 2201, asking the Court to find

---

[1] In addition to Kaur, Maxum named the Estate of Baljinder Singh; Gursharan Singh; Paramjit Kaur; Onkar Transport, Inc. ("Onkar"); Onkar Trucking, Inc.; Joshi Sangam ("Sangam"); Nijjar Transport, Inc. ("Nijjar"); Bristow Logistics, Inc. ("Bristow"); and Sky Transportation ("Sky"). ECF No. 1. Counsel submitted that Onkar Trucking, Inc. was a misidentified, non-entity. ECF No. 12. In addition, on June 13, 2018, the Clerk entered default against Sky. ECF No. 37. The Estate of Singh, Gursharan Singh, and Paramjit Kaur collectively answered. ECF No. 26. Sangam, Onkar, Nijjar, and Bristow all separately answered. ECF No. 18, 19, 20, 21. Nijjar's answer asserted a counterclaim against Maxum seeking declaratory relief under 28 U.S.C. § 2201 that Maxum must indemnify Kaur in the state action. ECF No. 21.

1

that Maxum has 1) no duty to defend and 2) no duty to indemnify Kaur in the state court action. *Id.*

On September 26, 2018, Maxum filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 against all Defendants. ECF No. 50. Kaur filed an opposition on October 15, 2018, ECF No. 52, as did Sangam, Onkar, Nijjar, and Bristow collectively (together with Kaur, "Defendants"). ECF No. 51. Maxum filed a reply on October 22, 2018. ECF No. 53. The issue presented on this summary judgment motion is whether a policy exclusion or a premises limitation in the Maxum Policy precludes insurance coverage in the underlying state court litigation. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). Having considered the parties' briefing and the relevant law, the Court issues the following order.

## II. FACTUAL BACKGROUND

The parties agree on all material facts as submitted in the joint statement of undisputed facts. ECF No. 50-2, ("UMF").[2]

On January 4, 2017, the Estate of Baldjinder Singh filed a complaint in San Bernardino Superior Court, Case No. CIVDS 1700068 in connection with the death of Baljinder Singh (the "Underlying Action"). ECF No. 50-4, ("Ex. A"). Baldjinder Singh died in a single-vehicle, tractor-trailer accident on December 22, 2015 in New Mexico. UMF 1-2. Joshi Sangam was the driver of the tractor-trailer at the time of the accident. UMF 5. Kaur is alleged to have trained Sangam in the operation of the tractor-trailer. UMF 5. Singh's estate and his parents, Gursharan Singh and Paramjit Kaur, sued Sangam and Kaur, along with Onkar, Nijjar, Bristow, and Sky. Ex. A.[3] The Underlying Action alleges three causes of action in connection with the death of Singh against the state court defendants for 1) negligence (wrongful death), 2) negligent hiring, training, supervision, or retention of unfit employee (wrongful death), and 3) survival cause of action for the injuries sustained by Singh. UMF 4; Ex. A.

---

[2] Although the Estate of Singh, Gursharan Singh, and Paramjit Kaur did not file a response to the summary judgment motion they did join in the joint statement of undisputed facts along with the other Defendants that have appeared. ECF No 50-2.

[3] It is not clear from the documents the Court has received what the relationship of Onkar, Nijjar, Bristow, and Sky is with respect to the December 2015 accident.

Maxum issued Policy No. BDG-0064064-04, a commercial general liability ("CGL") policy, to Defendant Kaur, d/b/a Safeway Truck Driving School, effective for the policy period June 14, 2015 to June 14, 2016 ("Maxum Policy" or the "Policy"). UMF 6; ECF No. 50-5, ("Ex. B"); ECF No. 50-3 at ¶ 3. The Policy was in effect on the date of the subject accident. UMF 6. The Policy had liability limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. Ex. B at 22.[4] The Policy's "Coverage A" Insuring Agreement provides that:

> **a.** [Maxum] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Maxum] will have the right and duty to defend the insured against any 'suit' seeking those damages. However, [Maxum] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. . .
> …
> **b.** This insurance applies to 'bodily injury' and 'property damage' only if:
> > **(1)** The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; . . .

UMF 7; Ex. B at 24. "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B at 37. The "coverage territory" includes anywhere in the United States. Ex. B at 36. The Maxum Policy contains certain policy exclusions. Ex. B at 6-7.[5]

---

[4] Pin cites to page numbers refer to the ECF-generated pagination in the upper right-hand corner of the document.
[5] The Forms and Endorsements Schedule lists several exclusions applicable to the CGL liability coverage in addition to the auto exclusion discussed herein:
- Exclusion · Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability- Limited Bodily Injury Exception Not Included;
- Communicable Disease Exclusion;
- Employment-Related Practices Exclusion;
- Total Pollution Exclusion with a Hostile Fire Exception;
- Fungi or Bacteria Exclusion;
- Exclusion - Physical Abuse Or Sexual Abuse;
- Exclusion - Participants And Contestants;
- Exclusion -Voluntary Labor;
- Exclusion - Punitive or Exemplary Damages;
- Exclusion - Athletic or sports Participants and Performers;
- Exclusion - Professional Services;
- Exclusion -Asbestos, Silica and Silica Dust

Ex. B at 6.

The Policy exclusion at issue here is contained in an endorsement and provides:

**EXCLUSION – AUTO**

[¶]

> This insurance does not apply to:
> g. Aircraft, Auto, or Watercraft
> 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, operation, use, chartering, renting, entrustment to others, 'loading or unloading' of any aircraft, 'auto' or watercraft, including the supervision, hiring, employment, training or monitoring of, or failure to warn, anyone in connection with the ownership, maintenance, operation, use, chartering, renting, or entrustment to others of any aircraft, 'auto' or watercraft.

UMF 8, 10-11; Ex. B at 54.[6] The Maxum Policy defines "auto" as a "land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment." UMF 9; Ex. B at 35.

The policy also contains a premises limitation titled "**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**" which provides in part that "[t]his insurance applies only to 'bodily injury'. . . arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule . . . ." UMF 13; Ex. B at 52. The premises identified in the Schedule include two locations in California. UMF 14; Ex. B at 52. For the purposes of this motion, the parties do not dispute that the identified premises were used to train student drivers including Joshi Sangam. UMF 15.

Maxum undertook Kaur's defense in the Underlying Action with a full reservation of rights. Maxum brought this action for declaratory relief and sought summary adjudication on the ground that there was no potential for insurance coverage under the CGL policy it issued to Kaur, and

---

[6] This endorsement provision replaced Exclusion g. in the CGL coverage form. The provision in the CGL coverage form originally provided:
> 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft *owned or operated by or rented or loaned to any insured*. Use includes operation and 'loading or unloading'.
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft *that is owned or operated by or rented or loaned to any insured*.
Ex. B at 27. (emphasis added).

4

correspondingly seeking a judicial declaration that it has no duty to defend or indemnify Kaur in the Underlying Action under the Maxum Policy.

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See id.* at 255; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. A fact is "material" if its proof or disproof is essential to an element of a plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(c); *Liberty Lobby, Inc.*, 477 U.S. at 250.

### IV. <u>DISCUSSION</u>

Maxum contends that it is entitled to summary judgment because the Policy does not provide

coverage for the Underlying Action based on two separate grounds: 1) the Maxum Policy's "auto" exclusion specifically precludes coverage for the claims in the Underlying Action; and 2) the Maxum Policy limits coverage to certain premises and the subject accident did not occur in the same state as the insured premises. ECF No. 50-1 at 2. As a result, Maxum contends that it has no duty to defend or indemnify Defendant Kaur in the Underlying Action and it is entitled to declaratory relief pursuant to 28 U.S.C § 2201 saying as much.

Defendant Kaur, who is not represented by counsel, filed an opposition arguing that summary judgment should be denied. ECF No. 52. However, his opposition does not address Maxum's arguments concerning the interpretation of the insurance policy language in connection with the Underlying Action and instead relates to why he should not be held liable in the Underlying Action. *Id.* Kaur submits that he has been unjustly sued and requests to be indemnified by Maxum because he "procured proper insurance with all premiums paid to Maxum." ECF No. 52 at 3.[7] Sangam, Onkar, Nijjar, and Bristow jointly submitted an opposition to the summary judgment motion and argue the auto exclusion and premises limitation provisions in the insurance agreement are ambiguous and unclear so should be construed narrowly and in favor of the insured. ECF No. 51 at 8-13. They separately submit that the Court, in its discretion should not exercise jurisdiction over this declaratory judgment action. *Id.* at 6-8. Because Defendants[8] have raised the issue of whether the Court should exercise jurisdiction, the Court first addresses this before addressing the remaining arguments of the parties.

## A.   DISCRETION TO ADJUDICATE UNDER THE DECLARATORY JUDGMENT ACT

In opposition to Plaintiff's motion for summary judgment, Defendants argue that this Court, in its discretion under the Declaratory Judgment Act, should not exercise jurisdiction over this this declaratory judgment action, because there is a remedy available to Maxum in California state court. ECF

---

[7] Kaur also submitted a declaration as part of his motion which largely amount to arguments for why he should not be liable in the Underlying Action. ECF No. 52 at 5-7.

[8] In referencing "Defendants" the court is referring to the arguments that were submitted by Sangam, Onkar, Nijjar, and Bristow in their opposition. ECF No. 51.

No. 51 at 6-8.

The Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction. . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). If a lawsuit seeking federal declaratory relief meets the constitutional requirements of presenting an actual case and controversy and fulfills statutory jurisdictional prerequisites, the district court must also be satisfied, in its discretion, that entertaining the action is appropriate. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc). "[T]he Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority'" and gave federal courts discretion to make a declaration of rights but did not impose a duty to do so. *Id.* at 1223 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)). The district court's discretion is not "unfettered;" instead "[p]rudential guidance for retention of the district court's authority is found in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 [ ] (1942), and its progeny." *Id.* at 1223; *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) ("The Supreme Court has provided guidance for the exercise of the district court's discretionary decision whether to entertain declaratory relief.").

As interpreted by the Ninth Circuit, in *Brillhart*, the Supreme Court articulated three factors that courts should consider when examining the propriety of entertaining a declaratory judgment action: (1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *Dizol*, 133 F.3d at 1225; *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). The *Brillhart* factors are not exclusive and other factors for consideration when determining whether to exercise jurisdiction include:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) (quoting *Dizol*, 133 F.3d at 1225 n.5). "Although courts may also consider a number of other factors, the three '*Brillhart* factors remain the philosophic touchstone'" for the analysis. *R.R. St. & Co. Inc.*, 656 F.3d at 975 (quoting *Dizol*, 133 F.3d at 1225). "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Robinson*, 394 F.3d at 672 (quoting *Kearns*, 15 F.3d at 144).

Here, neither party disputes that there is jurisdiction or that the constitutional dictates of an actual case or controversy have been met. However, Defendants argue that the Court, in its discretion, should decline to exercise jurisdiction over this declaratory action. ECF No. 51 at 6-8. Where a party raises the issue of a court's exercise of discretion under the Declaratory Judgment Act, the Ninth Circuit has held that the "the court must record its reasoning for exercising jurisdiction in accordance with *Brillhart* and the general considerations we have described herein." *Dizol*, 133 F3d. at 1227. Without much elaboration, Defendants generally assert that the *Brillhart* factors weigh in favor of the district court declining to exercise jurisdiction over this action. ECF No. 51 at 6-8. Defendants submit that Court should not exercise jurisdiction because California has a mechanism for obtaining a declaration of rights, pursuant to Cal. Cal. Civ. Proc. Code § 1060, in the state court that will decide the underlying tort claim. *Id.* at 7. Defendants also assert that the state court is in a superior position to address the legal issue when an insurer seeks a declaration of rights. *Id.* Because of this, and the fact that there is a state court action pending on the underlying tort claim, Defendants argue that Maxum should have filed this action in state court and assert that the federal complaint should be dismissed on this basis. *Id.*

In reply, Maxum agrees that Defendants have identified the proper factors for consideration but submits that these factors weigh in favor of the Court's exercise of jurisdiction. ECF No. 53 2-4. In particular, Maxum points out that this is the only action pending that involves the question of coverage under the insurance policy and that there is no parallel action in state court. Maxum is not a party (nor could it be) to the state court tort claim against its insured. Maxum further submits that judicial administration, fairness to the litigants, and convenience would not be served by Defendants' dilatory

8

request for dismissal on these grounds. This action has been pending for over a year in federal court, the summary judgment motion has been fully briefed, and the parties have stipulated to undisputed facts with regard to the summary judgment motion such that dismissal would result in starting the entire process anew in state court. Maxum also submits that it has not engaged in forum shopping as Defendants do not identify what advantage Maxum gains by seeking a coverage determination in federal court under 28 U.S.C. § 1332 since the substantive law of California would apply in both the state and federal forum. Additionally, this action would settle all aspects of the controversy and clarifies the legal issue of whether Maxum owes a duty to defend or indemnify Kaur in the Underlying Action. Lastly, Maxum submits that there is no entanglement of state and federal court systems because the factual issues on which coverage can be determined are undisputed and do not require admission of fault by the insured such that it implicates liability issues in the Underlying Action.

Besides the fact that insurance law involves state law issues, that the underlying tort action is pending in state court, and that California law provides for declaratory relief under Cal. Civ. Proc. Code § 1060, Defendants do not identify other factors which weigh in favor of declining to exercising jurisdiction. These submitted factors are not particularly convincing on their own and do not weigh heavily in favor of abstaining from jurisdiction. Defendants argument that there is a state court action pending ignores that Maxum is not a party to the action and that it does not involve the same legal issues that are presented here - where the state court action is a tort action and this action involves contract interpretation of Kaur's insurance policy with Maxum. *Cf. Dizol*, 133 F.3d at 1225 ("If there are parallel state proceedings involving the *same issues and parties* pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.") (emphasis added). "The pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. . . [T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Id.* at 1225. While it is true that California has a mechanism to provide declaratory relief in state court and Maxum could have filed this suit in state court, this alone does not

provide sufficient reason for the Court not to exercise discretion after consideration of other factors discussed below. "We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage." *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199 (9th Cir. 1992) (finding district court properly heard the case where there was no state action pending when insurer filed its federal declaratory relief action).

The determination of state law issues in an insurance coverage dispute (first *Brillhart* factor) may weigh against the exercise of jurisdiction, however as there is no pending state court action which would determine the coverage issue presented here, there would be no duplicative litigation (third *Brillhart* factor) and this weighs in favor of exercising jurisdiction. As to the second *Brillhart* factor, Defendants do not present any reason to assume that Maxum is forum shopping or attempting to gain a procedural advantage through its choice of federal forum besides the fact that Maxum elected the federal court when it could have filed its suit in state court. *See, e.g.*, *Advent, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 13-CV-00561, 2013 WL 3483742, at *5 (N.D. Cal. July 8, 2013) (giving the second *Brillhart* factor little weight and reasoning "[t]o automatically close the door to federal court in order to avoid forum shopping in declaratory judgment actions, merely because state courts make declaratory relief available, would deplete the broad discretion district courts have in determining whether to retain jurisdiction under 28 U.S.C. § 2201(a)."). "[T]he desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III[,]" and the Ninth Circuit is "cautious about labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court." *R.R. St. & Co. Inc*, 656 F.3d at 982. The Court finds that forum shopping (second *Brillhart* factor) does not weigh for or against exercising jurisdiction.

Additionally, consideration of the other factors, such as whether the suit will settle all aspects of the controversy and serve a useful purpose in clarifying legal relations at issue weigh in favor of entertaining the suit. *See, e.g.*, *Robinson*, 394 F.3d at 672. As Maxum points out, judicial administration

and fairness to the litigants weigh in favor of retaining jurisdiction. Defendants do not explain why they have waited until summary judgment to raise the issue of dismissal of this action. Nor do Defendants explain how the legal determination on the applicability of a policy exclusion that is presented on Maxum's summary judgment motion would somehow interfere with the pending state court proceeding. *See Kearns*, 15 F.3d at 145 ("there is no per se rule against the district court exercising its jurisdiction to resolve an insurance coverage dispute when the underlying liability suit is pending in state court."). As there is no state court action on this coverage dispute, it does not implicate *Brillhart's* concern with "[g]ratuitous interference" with state law issues pending in state court lawsuits involving the same parties. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995); *Travelers Indem. Co. of Connecticut v. KB Home N. Bay, Inc.*, No. CV 1:15-481, 2015 WL 5697362, at *3-4 (E.D. Cal. Sept. 28, 2015) (finding that because there were no similar claims against insurer in state court, "[t]he court's determination of the issues in this action will thus be original, rather than repetitive, and will not result in a needless determination of state law issues, encourage forum shopping, or lead to duplicative litigation."). This lawsuit has been pending for over a year, summary judgment briefing is now complete, and the parties have stipulated to undisputed facts for the purposes of the motion. Dismissal would result in starting anew in state court. "[C]onsiderations of practicality and wise judicial administration" are central to the discretionary exercise of jurisdiction in the declaratory judgment context. *Wilton*, 515 U.S. at 288. Consideration of the convenience of the parties, and the availability and relative convenience of other remedies are also appropriate and weigh against dismissal at this late stage. *See, e.g.*, *Robinson*, 394 F.3d at 672. These considerations, namely practicality and wise judicial administration, weigh strongly against dismissal.

Thus, Defendants' dilatory request for discretionary dismissal of the action is DENIED and the Court will address the merits of Maxum's summary judgment motion.

**B.**     **AUTO EXCLUSION**

In moving for summary judgment, Maxum contends that the Policy unambiguously excludes

coverage for "bodily injury" arising out of the use of any auto, including the training of anyone in connection with the use of any auto, barring coverage for the Underlying Action's claims against Kaur. ECF No. 50-1 at 4-8. Maxum contends that the sole cause of Mr. Singh's death was a tractor-trailer accident; that Kaur is alleged to have negligently trained the driver of the tractor trailer; and that the auto exclusion applies broadly regardless of the ownership or use of the auto by the insured. *Id.* at 6.

In response, Defendants argue that CGL policies are meant to cover any risks that are not covered by other insurance and that automobile insurance would not cover a claim of negligent training which is at issue here. ECF No. 51 at 8. Additionally, Defendants submit that the scope of the auto exclusion is ambiguous and that no average lay person would have understood an auto exclusion to exclude coverage for an allegation of negligent training of the trucking school's specialty students. *Id.* at 8-9. Specifically, Defendants submit that an average lay person would understand an auto exclusion to apply to the use of an auto owned or possessed by the insured or being utilized by a driver trained by insured when the accident occurred. *Id.* at 10-12. Because the scope of the provision is not clear, the provision should be interpreted in the context of the agreement and in that context, the exclusion emphasizes vehicles and would seemingly involve situations where there is a relationship between the insured party and the vehicle that causes injury. *Id.* Given the ambiguity, the provision should be interpreted narrowly and should not apply when the insured has no connection with the automobile involved in the accident. *Id.* Accordingly, because the Underlying Action alleges bodily injury involving an auto that had no relationship or connection to the insured, Defendants submit that the auto exclusion should not apply to allegations in the Underlying Action and summary judgment should be denied. *Id.*

## 1. **Principles of Contract Interpretation**

As an initial matter, jurisdiction in this case is based upon diversity, and both parties agree that the interpretation of the subject insurance policy is governed by the law of the State of California. *See Continental Insurance Co. v. Metro-Goldwyn-Mayer, Inc.*, 107 F.3d 1344, 1346 (9th Cir. 1997) (applying California insurance law in diversity case).

"Interpretation of a contract is a purely legal question…" *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004) (citing *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003) (interpretation of a contract is a pure question of law)). Under California law, insurance policies are also contracts which can be interpreted as a matter of law, including the resolution of any ambiguity. *Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) ("Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation").

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties" which should be inferred solely from the written provisions of the contract if possible. *MacKinnon*, 31 Cal. 4th at 647. "If contractual language is clear and explicit, it governs." *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993), *as modified* (Sept. 21, 1993) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)); *see also* Cal. Civ. Code, § 1638. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation. Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, we apply that meaning." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949-50 (9th Cir. 2002) (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990)) (citations omitted). "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins. Corp.*, 76 F. Supp. 3d at 879 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995). "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." *Waller*, 11 Cal. 4th at 19.

However, if contract language is considered ambiguous it is resolved by interpreting the

ambiguous provisions in the sense the promisor (i.e., the insurer) believed the promisee understood them at the time of formation. *AIU Ins. Co.*, 51 Cal. 3d at 822; Cal. Civ. Code § 1649. If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist, i.e. the insurer in insurance contracts. *Id.* (citing Cal. Civ. Code § 1654). "In the insurance context, we generally resolve ambiguities in favor of coverage." *Id.* "Coverage clauses are interpreted broadly so as to afford the greatest protection to the insured, while exclusion clauses are interpreted narrowly." *TBG, Inc. v. Commercial Union Ins. Co.*, 806 F. Supp. 1444, 1446 (N.D. Cal. 1990); *Mosten Mgmt. Co. v. Zurich-Am. Ins. Grp.*, No. C-89-3475 SBA, 1992 WL 685749, at *7 (N.D. Cal. June 19, 1992) ("[I]t has long been the law in California that coverage clauses are broadly construed so as to afford the greatest possible protection to the insured and exclusionary clauses are interpreted narrowly against the insurer.").

"In the insurance context, we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004) (internal quotation marks omitted). To be effective, an "exclusionary clause must be 'conspicuous, plain and clear.'" *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 273 (1966) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d 862, 878 (1962)). However, "[i]t must be kept in mind that an insurer is free to select the character of the risk it will assume" and an insurer "has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280 (1977) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.* 46 Cal. 2d 423, 432 (1956)).

## 2.     <u>An Insurer's Duty To Defend</u>

The duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). It is a well-accepted rule that "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy . . . ." *State Farm Mut. Auto. Ins. Co.*

*v. Longden*, 197 Cal. App. 3d 226, 233 (1987) (quoting *Gray*, 65 Cal. 2d at 275) (emphasis in original). "Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires us to interpret the language of the insuring agreement and is a question of law." *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 508 (2001); *see also Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 847 F. Supp. 1460, 1466 (N.D. Cal.), *opinion amended on reconsideration*, 875 F. Supp. 656 (N.D. Cal. 1994) ("Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue amenable to resolution on summary judgment.") "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Waller*, 11 Cal. 4th at 19.

"[T]o be entitled to a defense, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Barnett*, 90 Cal. App. 4th at 508 (internal quotation omitted). Although the duty to defend is broad, it "is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller*, 11 Cal. 4th at 19. "[T]he insurer is not required to defend an action against the insured when the complaint in that action shows on its face that the injury complained of is not only not covered by, but is excluded from the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 297 (1993). When the question of coverage can be determined as a matter of law on undisputed facts, an insurer may seek adjudication that "no potential for liability exists and thus that it has no duty to defend." *Id.* at 298. The "[c]ritical question" is whether the undisputed facts "conclusively eliminate a potential for liability." *Id.* at 298-99.

### 3. Interpretation of Auto Exclusion in Maxum's CGL Policy

The material facts are not disputed by the parties. Maxum does not dispute that the insuring clause of Kaur's CGL policy would apply to the Underlying Action if an exception to coverage did not apply. ECF No. 53 at 6. Maxum argues that the auto exclusion endorsement in the Policy excludes coverage in the Underlying Action and thus it has no duty to defend, and correspondingly no duty to indemnify Kaur.

15

Accordingly, the interpretation of the auto exclusion is determinative of whether Maxum has a duty to defend here. The parties agree that the tractor-trailer involved in the accident that killed Singh meets the definition of "auto" as defined in the Maxum Policy as a motor vehicle designed for travel on public roads. UMF 3, 9; *see also* Ex. B at 35. They further agree that Kaur was responsible from training Sangam, the driver in the auto accident. UMF 5. It further appears that the parties agree that the negligent conduct that caused the bodily injury - Singh's death – involved the "use" an auto.[9]

In pertinent part, the auto exclusion here provides that the "insurance does not apply to… '[b]odily injury'. . . arising out of the. . . use. . . of any. . . 'auto'. . . including the supervision, hiring, employment, training or monitoring of, . . . anyone in connection with the. . . use . . . of any . . . 'auto'. . . ." UMF 8; Ex. B at 54.

Maxum relies primarily on *Colony Ins. Co. v. Advanced Logistics Mgmt., Inc.*, No. CV 15-1965, 2015 WL 12745787, at *7 (C.D. Cal. Nov. 13, 2015) in support of its argument that the auto exclusion in this case should be interpreted broadly as written and summary judgment should be granted. In *Colony*, the insured owned and operated a trucking company at a specified location and the premises included a truck scale on which insured's business invitees could weigh their trucks. *Id.* at *2. Insured was sued when an invitee was injured upon exiting his truck onto the scale and alleged that insured failed to properly maintain the truck scale and failed to provide proper lighting or a proper method for exiting trucks onto the scale. *Id.* The auto exclusion in insured's CGL policy was broadly worded to exclude "'[b]odily injury'. . . <u>arising directly or indirectly</u> out of the ownership, maintenance, <u>use</u> or entrustment

---

[9] Many cases involving coverage disputes in the context of auto exclusions dispute whether the underlying action involved the "use" of an auto when there are also claims for other negligent acts in addition to the negligence in the use of an auto. *See State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 97 (1973) (where defendant insured had modified a pistol so that it had a "hair trigger" and pistol discharged when car hit a bump and injured passenger, homeowner's policy's auto exclusion did not exclude coverage for injuries because the negligent filing of the trigger mechanism constituted a "concurrent proximate cause" of the accident which was covered). Some California Court of Appeals decisions have adopted a "predominating/substantial fact" test for whether an injury arises out of the "use" of an auto other have applied a "minimal causal connection" test. *Gradillas v. Lincoln Gen. Ins. Co.*, 792 F.3d 1050 (9th Cir. 2015) (certifying the question of appropriate test to apply to the California Supreme Court which dismissed certified question upon settlement). Because there is no dispute that both the accident and the training involved the "use" of an auto, the appropriate test and the *Partridge* line of cases are not relevant to the facts of this case.

to others of any. . . 'auto'. . . <u>Use includes operation and "loading and unloading</u>" and also had a provision to exclude claims alleging negligence or other wrongdoing in the supervision or training of others if the bodily injury involved the use of any auto. *Id.* at *3. (emphasis in original). The district court found that the policy was "not ambiguous because it contains plain and clear exclusionary language" and held that the auto exclusion precluded coverage. *Id.* at *7. In response to insured's argument that enforcement of the insurer's broad interpretation of the exclusion would render coverage illusory, the court found that "[a]lthough the practical result may be that a broad variety of claims occurring on a premises operating a trucking company are excluded, this does not create illusory or otherwise ambiguous coverage." *Id.*

In contrast, Defendants primarily rely on *Essex Ins. Co. v. City of Bakersfield*, 154 Cal. App. 4th 696, 709-10 (2007), *as modified* (Aug. 27, 2007), to support the argument that the auto exclusion should not apply to exclude coverage under the circumstances of this case, where the auto in the underlying accident had no connection to the insured. In *Essex*, the insured, the City of Bakersfield, had a liability policy in connection with a special event it was hosting, and the policy contained a broad auto exclusion which excluded coverage for "'bodily injury'. . . arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any 'auto.' . . ." *Id.* at 701-702. A traffic accident occurred between two drivers, who were not associated with the City's event, outside the premises of the event but on a nearby road. *Id.* at 699-700. The City was sued for allegedly causing a "dangerous condition" by failing to provide traffic controls which then contributed to the traffic accident. *Id.* at 700-701. The form policy, like the one here, initially limited the auto exclusion to any auto "owned or operated by or rented or loaned to any insured." *Id.* at 701. Nonetheless, the court found that the endorsements which excluded coverage for use of *any* auto did not apply when the vehicles in the accident were not connected to the insured. *Id.* at 707 ("modification of the auto exclusion provision—the addition of the term "non-ownership" and the removal of the language "owned or operated by or rented or loaned to any insured"—do not plainly and clearly provide that there would be no coverage for cases involving autos that have no connection to the insured.") "The auto exclusions when viewed in the context of the

insurance policy do not plainly and clearly exclude coverage for bodily injuries arising from automobile accidents *where the insured had no connection to the automobiles involved*." *Id.* at 707-08 (emphasis added) (noting "an average layperson would interpret the auto exclusions as applying to lawsuits involving the use of . . . any 'auto' by any insured or on the insured premises.") In so reasoning, the court found that Essex's interpretation of the auto exclusion to exclude coverage for the car accident where the cars were not connected to the insured did not comport with the common understanding of auto exclusions in CGL policies. *Id.* at 709. The court noted that an auto exclusion "is an exclusion designed to limit coverage for risks normally covered by other insurance. To cover these risks, the insured must purchase separate insurance." *Id.* at 710 (internal quotation marks and citation omitted). "Given that the City could not get separate automobile insurance for the accident in the [underlying] lawsuit, the auto exclusions should not be interpreted to deny the City coverage for a claim alleging that the City created a dangerous condition of public property that contributed to the automobile accident." *Id.* at 710.

On the one hand, the fact that the auto exclusion is broad does not necessarily create ambiguity. *See Atl. Mut. Ins. Co. v. Ruiz*, 123 Cal. App. 4th 1197, 1203 (2004) (noting that breadth does not create ambiguity because a "word with a broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose."). The auto exclusion in this case is broadly worded and several courts have found similarly-worded broad auto exclusions are not ambiguous and therefore have enforced the exclusion. *See Farmers Ins. Exch. v. Superior Court*, 220 Cal. App. 4th 1199, 1209-10 (2013), *as modified on denial of reh'g* (Oct. 28, 2013) (collecting cases) (granting insurer summary judgment based on broad auto exclusion in homeowner policy where grandfather ran over grandchild in driveway of insured's residence and underlying action also alleged negligent supervision claims against the grandmother). In cases where the "injury involved no instrumentality other than the vehicle itself, and there would have been no accident without the use or operation of the vehicle . . . courts have generally found that the motor vehicle or relevant exclusion applies to bar coverage." *Id.* at 1209 (internal quotation marks and citations omitted); *see also Belmonte v. Employers Ins. Co.*, 83 Cal. App. 4th 430,

434 (2000) (auto exclusion in CGL policy barred premises liability claims for negligent use of insured's premises where niece stole van of insured who owned and operated a store and injured friend; the court found exclusion was explicit and was not "limited to use of vehicle by the named insured"); *Bernstein by Valdez v. Nautilus Ins. Co.*, No. 16-CV-02883, 2017 WL 3149599, at *3 (S.D. Cal. July 25, 2017) (distinguishing *Essex* and finding auto exclusion unambiguously applies to preclude coverage for single car accident against insured company where employee driver injured passenger in accident).

On the other hand, "it is rare for a defendant to be sued for an automobile accident when the defendant had no connection with any of the vehicles involved." *Essex*, 154 Cal. App. 4th at 710. Most cases that have interpreted auto exclusions and upheld them as unambiguous "addressed situations where the automobile involved was owned, maintained, or used by an insured or an insured's agent or employee." *Id.* at 708-09. Exclusions must be viewed in the context of each specific case. *See Ruiz*, 123 Cal. App. 4th at 1203 ("policy provision is ambiguous only if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms *within the context of the policy as a whole*.") (emphasis added). The context of most of the cases enforcing these broad auto exclusions differ from the facts of this case – for example, many involve homeowner's or CGL policies where insured had some connection to the driver or vehicle and coverage existed separately under an automobile policy of the same insured. *See, e.g.*, *Farmers Ins. Exch.*, 220 Cal. App. 4th at 1209-10 (collecting cases). Far fewer cases address the auto exclusion in the context where the insured did not have any connection with the auto involved in the underlying action but a brief discussion of some relevant cases is warranted.

In *Scottsdale Indem. Co. v. Lexington Ins. Co.*, an insured private security officer was directing traffic in a funeral procession and a motorcycle unrelated to the insured employee crashed into another car nearby. No. EDCV 12-00017, 2012 WL 6590716 (C.D. Cal. Dec. 18, 2012). The court found that the commercial automobile insurance for private security company did not provide coverage because the loss "did not arise out of the use of the *covered auto*" where the employee was alleged to have created a dangerous condition in directing traffic and employee's motorcycle was not involved in the accident. *Id.*

at *7 (emphasis added). However, the court found that the company's CGL policy, which covered all losses unless specifically excluded but which included an auto exclusion for losses arising out of the use of an auto, did provide coverage. *Id.* at *3-4. The court found that "[t]he type of policy which, by its nature, is expected to take into account an insured's professional duties is a *professional liability insurance policy.* [The Company's] professional liability coverage came from the [CGL policy], not the [automobile policy] and it was the [CGL policy] that should have contemplated risk of the very loss that occurred in this case." *Id.* at *8 (emphasis in original). In contrast, in *Evanston Ins. Co. v. Atain Specialty Ins. Co.*, a dispute arose where an insured's employee was directing pedestrians to cross as part of funeral procession and another employee collided with a crossing pedestrian on his motorcycle. 254 F. Supp. 3d 1150, 1153 (N.D. Cal. 2017). The court distinguished *Scottsdale* in part because the motor vehicles in the *Scottsdale* accident had no connection to insured employee, and found that the auto exclusion in the CGL policy applied to preclude coverage. *Id.* Notably, the court found that application of auto exclusion did not cause defendant's CGL's policy to be a "nullity" in part noting that it is possible under *Essex* that insured's CGL policy would have covered the accident in the instant case if the crash involved an auto that had no connection with insured. *Id.*

However, other courts have found that limiting an auto exclusion to autos that have a connection to the insured is inappropriate when the language has no such limitation. "[W]here an exclusion in an insurance policy 'discloses no suggestion that it relates exclusively to [specific types of] claims' but 'its language is broad and unqualified,' courts will not interpret it to apply only to those specific types of claims." *Farmers Ins. Exch.*, 220 Cal. App. 4th at 1213 (quoting *Total Call Internat. Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 173 (2010)). In *Allstate Ins. Co. v. Naai*, the insurer issued a comprehensive personal liability policy to insureds who were landlords and rented out the subject residential property where an auto accident occurred which killed a small child. 684 F. Supp. 2d 1220, 1222-23 (D. Haw. 2010), *aff'd*, 490 F. App'x 49 (9th Cir. 2012) (applying Hawaii law). It was alleged that the insured landlord's negligence resulted in an unsafe and dangerous condition on the rental property by placing the

playground near the resident manager's dwelling. *Id.* The Court found that the auto exclusion which excluded coverage for bodily injury arising out the use of *any* motorized vehicle, precluded coverage for the suit. *Id.* The insureds argued that the broad application of the auto exclusion to preclude coverage meant insured "would be left with no ability to purchase insurance to cover against the specific risk in the Underlying Lawsuit" since the vehicle had no connection to the insured and cited *Essex* for the proposition that automobile exclusions are designed to limit risks that are normally covered by other insurance. *Id.* at 1230. The court found that "[w]hile this may or may not be true, insurers have a contractual right to limit their liability and to impose conditions on their obligations that are not in contravention of statutory inhibitions or public policy." *Id.* The Ninth Circuit affirmed the broad application of the auto exclusion even though the use of the vehicle had no relationship with the insured. *Allstate Ins. Co. v. Naai*, 490 F. App'x 49, 51 (9th Cir. 2012) (unpublished disposition). The Ninth Circuit held "[t]he exclusion, as written, does not reasonably allow for different interpretations. Only by reading in a limitation—*an insured person's* ownership, operation, maintenance, or use—can the policy be interpreted to potentially provide coverage." *Id.* (emphasis in original).

An interpretation of an insurance clause must be reasonable and take into account the purpose of the insurance at issue." *Trident Seafoods Corp. v. ACE Am. Ins. Co.*, No. C12-2265, 2013 WL 4008831, at *2 (W.D. Wash. Aug. 2, 2013), *aff'd*, 668 F. App'x 793 (9th Cir. 2016). "Commercial General Liability Policies are designed to protect an insured against certain losses arising out of business operations." *Burlington Ins. Co. v. Bay One Sec., Inc.*, No. 17-CV-04734, 2018 WL 1730425, at *3 (N.D. Cal. Apr. 10, 2018), *appeal docketed*, No. 18-15835 (9th Cir. May 9, 2018) (citation omitted); Steven Plitt et al., 9A Couch on Insurance § 129:2 (3d ed.) ("Commercial general liability policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business."). "The complete elimination of any coverage under a policy might weigh against the application of an exclusion." *Evanston Ins. Co.*, 254 F. Supp. 3d at 1166; *see also Mayer Hoffman McCann, P.C. v. Camico Mut. Ins. Co.*, 161 F.Supp.3d 858, 870 (N.D. Cal. 2016) ("An agreement is illusory and there is

no valid contract when ones of the parties assumes no obligation.") (citation omitted); *Maryland Cas. Co. v. Reeder*, 221 Cal. App. 3d 961, 978 (1990), *modified* (July 25, 1990) ("we are counseled by general rules of contract interpretation to avoid a construction under which a contracting party receives no benefit from a contract."). However, in *Colony* the court found that the auto exclusion in the CGL policy did not render coverage illusory for a trucking company. 2015 WL 12745787, at *7 ("Although the practical result may be that a broad variety of claims occurring on a premises operating a trucking company are excluded, this does not create illusory or otherwise ambiguous coverage."); *Evanston*, 254 F. Supp. 3d at 1166 (noting CGL policy was not a "nullity" in part because "Defendant's CGL policy includes coverage for any other non-auto-related accidents that occur at [motorcycle escort business's] place of business"). The Court finds that the auto exclusion does not eliminate all coverage and therefore is not illusory as it would cover non-auto related incidents on Kaur's business premises. Maxum's interpretation of the auto exclusion is therefore not unreasonable in light of the function of CGL policies.

The Court concludes that the plain language of the contract is not ambiguous. Several courts have found the language of similarly-worded broad auto exclusions to be clear and conspicuous as discussed herein. *See Farmers Ins. Exch.*, 220 Cal. App. 4th at 1213 ("The language of the motor vehicle exclusion, however, is not ambiguous."). In addition, the Ninth Circuit has indicated that reading such Policy language as containing a limitation for autos that are owned or operated by the insured controverts the plain and broad language in the auto exclusion. *Naai*, 490 F. App'x at 51; *Allstate Indem. Co. v. Russell*, 345 F. App'x 264, 266 (9th Cir. 2009) ("Nothing in [the auto exclusion] language suggests that [it] appl[ies] only if the insured owned, used or occupied the vehicle.") (unpublished disposition). The language in the auto exclusion here also "focuses on the connection between the vehicle and the injury, not the vehicle and the insured." *See Naai*, 684 F. Supp. 2d at 1230. In fact, the Policy language originally had an auto exclusion that limited it to "any . . . 'auto' . . . that is owned or operated by or rented or loaned to any insured[,]" but the exclusion was replaced by the endorsement which specifically removed such limiting language. *Compare* Ex. B at 27, *with* Ex. B at 54; *Haynes*, 32 Cal. 4th at 1204 ("Coverage may

be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails."); *see also Farmers Ins. Exch.*, 220 Cal. App. 4th at 1213 ("the policy distinguishes between exclusions that apply to conduct by an insured and those that apply to conduct by anyone, and the motor vehicle exclusion applies to motor vehicle conduct by anyone, insured or noninsured.").

In *Essex*, the court found that "[t]he language of the auto exclusions does not plainly and clearly provide that the auto exclusions would be applied [to preclude a claim for the creation of a dangerous traffic condition]." *Essex*, 154 Cal. App. 4th at 707. In contrast, the language here plainly and explicitly excludes coverage for "'bodily injury'. . . arising out of the . . . use . . . of any . . . 'auto'. . . including the . . . training. . . of . . . anyone in connection with the ownership, maintenance, operation, [or] use. . . of . . . any. . . 'auto'. . . " UMF 8; Ex. B at 54.[10] The Court will not strain to create ambiguity where none exists and will not read limiting language into the terms as written. *See* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."). "[C]overage is precluded when the exclusionary language is explicit." *Belmonte,* 83 Cal. App. 4th at 434-35 (finding language of this exclusion unambiguous and not "limited to use by the named insured."). The parties submit that Kaur is alleged to have trained Sangam in connection with the use of a tractor trailer and Sangam's use of a tractor trailer caused the bodily injury to Singh. *See* UMF 1-5. "There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle[,]" *Nat'l Indem. Co. v. Farmers Home Mut. Ins. Co.*, 95 Cal. App. 3d 102, 109 (1979), and "[t]he exclusion, as written, does not reasonably allow for different interpretations." *Naai*, 490 F. App'x at 51. The language in the auto exclusion here explicitly excludes coverage for the injury that occurred in the Underlying Action as it was related to Kaur's training of

---

[10] The Court is not convinced by Defendants' argument that no average layperson would interpret the auto exclusion to exclude coverage for negligent training claims where the exclusion here explicitly includes training in use of an auto, unlike the creation of a dangerous traffic condition claim that was at issue in *Essex*.

Sangam in the use of "autos". Therefore, there is no potential for coverage given the explicit language in the Policy's automobile exclusion.

For all the reasons above, the Court finds that Maxum had no duty to defend and no duty to indemnify Kaur in the Underlying Action under the Policy. Accordingly, the Court GRANTS Plaintiff Maxum's motion for summary judgment.

## C.    PREMISES LIMITATION AS A BAR TO COVERAGE

Maxum additionally contends that the premises limitation in its Policy bars coverage for the underlying lawsuit against Kaur because there is no causal connection between the California premises set forth in the premises limitation and the alleged harm since the tractor trailer accident happened in New Mexico. ECF No. 50-1 at 8-10. The Court declines to reach the issue of whether the premises limitation in the Maxum Policy separately precludes coverage since it has found that the auto exclusion unambiguously applies to preclude coverage.

## V. CONCLUSION AND ORDER

For all the foregoing reasons, the Plaintiff Maxum's motion for summary judgment (ECF No. 50) is **GRANTED**. The parties are directed to meet and confer regarding the proper form of judgment in light of the defaulted Defendant Sky (ECF No. 37) and the apparently misidentified Onkar Trucking, Inc. (ECF No. 12), and to submit a proposed judgment within ten (10) days of the date of this Order.


IT IS SO ORDERED.

Dated:   **December 11, 2018**                    **/s/ Lawrence J. O'Neill**
                                         UNITED STATES CHIEF DISTRICT JUDGE